Filed 5/26/26  Yancey v. The State of Cal. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BRIANA YANCEY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>THE STATE OF CALIFORNIA,<br><br>    Defendant and Respondent. | G064596<br><br>(Super. Ct. No. 30-2022-01254629)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed on April 28, 2026, be modified as follows:

On page 15, replace heading III.C. in its entirety with the following:

*C. CMD's Salary Correction and Accounts Receivable Were Not Authorized Under Article XVI, Section 6 of the California Constitution*

There is no change in the judgment.

The petition for rehearing is DENIED.


DELANEY, ACTING P. J.

WE CONCUR:


GOODING, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIANA YANCEY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>THE STATE OF CALIFORNIA,<br><br>    Defendant and Respondent. | G064596<br><br>(Super. Ct. No. 30-2022-01254629)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Robert S. Nelson, Judge. Affirmed in part, reversed and remanded in part. Request for Judicial Notice. Denied.

Salusky Law Group, Anna R. Salusky, and Dionisios Aliazis for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian and Jacqueline H. Chern, Deputy Attorneys General for Defendant and Respondent the State of California.

*       *       *

Yancey sued her former employer, State of California acting by and through the California Military Department (CMD), for (1) violation of Government Code section 19257 (section 19257)[1] and California Code of Regulations, title 2, section 243.3, subdivision (b), (2) discrimination in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq; FEHA), and (3) Labor Code section 1102.5. The trial court granted CMD's motion for summary judgment. Yancey timely appealed.

We reverse the trial court's blanket order sustaining CMD's evidentiary objections, which were based on multiple grounds and required individual attention. We also reverse the court's ruling on Yancey's first cause of action under Government Code section 19257 and California Code of Regulations, title 2, section 243.3, subdivision (b). We find the court erred when it determined Government Code section 19257 was not applicable because Yancey's cause of action involved a salary dispute rather than an offer of state employment. However, we affirm the court's finding on Yancey's second cause of action for an alleged FEHA violation because Yancey failed to establish a triable issue of fact on the issue of pretext. Similarly, we affirm the trial court's ruling on the third cause of action under Labor Code section

_____

[1] All further statutory references are to the Government Code unless otherwise stated.

2

1102.5 because undisputed evidence proved CMD would have terminated Yancey's employment regardless of Yancey's complaint.

FACTUAL AND PROCEDURAL BACKGROUND

Yancey applied for a military instructor position with CMD in June 2015. At the time, Yancy had earned a bachelor's degree. The parties agree the military instructor position is a classification. Within the classification, the alternate range criteria determine the legal requirement that must be met by the employee before the employee can be placed in a specific pay range. Under the alternate range criteria, an individual working an 11-month schedule with a bachelor's degree, like Yancey, was eligible for range 2. In order for an individual to be eligible for range 4, they need to have earned a bachelor's degree and 24 upper division or graduate units which were not counted toward the degree.

Yancey was nominated for an appointment as a military instructor at STARBASE Los Alamitos, a program for CMD, in July 2015. Although Yancey's offer letter did not specify what range she was placed in, the offer letter indicated her salary would be $4,478.00 per month. Yancey accepted CMD's offer and began work on July 7, 2015.

A week after she started, Yancey reviewed her pay and was confused about it. Thus, Yancey emailed Angie Miller, the personnel manager of Human Resources for CMD, for clarification. Miller explained to Yancey that she was erroneously placed in Range D at the time of her hire. However, because the letter ranges apply to individuals on 12-month schedules, and because Yancey was on an 11-month schedule, Yancey should have been placed in a numerical range. Miller told Yancey CMD was "putting in for a salary exception," which would allow CMD to hire Yancey at a hire above

3

minimum,[2] apparently to match the pay in range D. Miller later informed Yancey that she had corrected Yancey's pay range to Range 4 at $4,207.50 per month. However, because Yancey qualified for the hire above minimum, CMD granted Yancey a 5 percent increase in pay and Yancey's salary was $4,417.87 per month. This was close to the range D pay CMD initially offered to Yancey.

Some four years later, in September 2019, one of the military instructors complained they were being paid incorrectly. Kimberly Deane, the Chief of Human Resources for CMD, had her staff investigate the issue. They discovered some of the military instructors had been keyed into the wrong pay option and were erroneously overpaid. In order to alleviate the accounts receivable that would have been issued because of the overpayments, CMD asked all the military instructors to submit proof of any educational credits they had obtained after hiring. Yancey submitted proof of additional credits, and based on this, CMD placed her in Range 5 and then Range 6. This new placement prompted CMD to issue Yancey back pay.

Yancey subsequently became pregnant and went on maternity leave in February 2020. CMD extended her leave multiple times through March 2021. During her leave, in September 2020, CMD advised Yancey it

---

[2] The human resources department that governs CMD, CalHR, provides a hire above minimum procedure, which allows payment above the minimum rate in the salary range of a classification when it "is necessary to obtain a person with extraordinary qualifications." To request a hire above minimum for a specific individual, CMD must document and retain the basis for the hire above minimum in a separate file. The documentation should include CalHR forms 684 and 678. Because CMD does not have delegated authority to grant a hire above minimum, CMD is required to send all hire above minimum requests to CalHR for approval.

had incorrectly placed her in Range 4 when she was hired. Moreover, CMD had misinterpreted the alternate range criteria when it subsequently placed Yancey in Range 5 and Range 6. Deane and her staff asked CalHR if they could backdate a hire above minimum to the time Yancey was hired, but CalHR declined because it had no record of a hire above minimum being requested or approved for Yancey at the time she was hired. Consequently, CMD informed Yancey it had corrected her pay to reflect the correct placement, Range 2. Yancey's new pay was $2,089 per month. CMD informed Yancey that an accounts receivable would be set up to correct the $109,448.86 overpayment covering the period between August 2017 and August 2020, and she could set up a payment plan. CMD later corrected the overpayment amount to $76,307.07.

On February 22, 2021, CMD sent Yancey a 30-day notice to return to work. In the notice, CMD explained it required Yancey to return to work because of its business need to maintain the STARBASE program. CMD subsequently sent Yancey an "Options Letter" where it indicated she could return to work or separate from state service via service retirement or voluntary resignation. Yancey responded, explaining she could not return to work at her new salary, she was not eligible to retire, and she would not be resigning. Yancey asked for a call with CMD and her union representative. Yancey did not return to work on March 22, 2021. She was subsequently absent without approved leave for five consecutive working days, March 22, 2021 through March 26, 2021. CMD then terminated Yancey.

In June 2021, Yancey filed a merit issue complaint with the State Personnel Board (SPB) Appeals Division. She alleged CMD was attempting to collect overpayment of wages in violation of Government Code section

5

19257 and California Code of Regulations, title 2, section 243.3, subdivision (b). The SPB determined CMD took appropriate action when it discovered its "range placement" error and when it corrected its errors by changing Yancey's range retroactively.

On April 13, 2022, Yancey filed a complaint with the Department of Fair Employment and Housing (DFEH). In her DFEH complaint, Yancey alleged CMD discriminated and retaliated against her for incidents occurring after she took pregnancy disability leave on February 6, 2020. DFEH closed Yancey's complaint the same day she filed because she requested an immediate right to sue notice.

Yancey filed her complaint in this action on April 20, 2022. The operative complaint, her second amended complaint (SAC), alleged three causes of action: (1) Violation of Government Code section 19257 and California Code of Regulations, title 2, Rule 243.3, subdivision (b); (2) Disability Discrimination in Violation of the FEHA; and (3) Retaliation in Violation of Labor Code section 1102.5. CMD moved for summary judgment, and the court granted it. The court subsequently entered judgment in CMD's favor.

Yancey timely appealed.

## DISCUSSION

### I.

### YANCEY'S REQUEST FOR JUDICIAL NOTICE

Yancey asks us to take judicial notice of printouts of screenshots from the CalHR's online "Human Resources Manual." "Judicial notice may not be taken of any matter unless authorized or required by law." (Evid. Code, § 450.) Matters that are subject to judicial notice are listed in Evidence

6

Code sections 451 and 452. A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute. (*Post v. Prati* (1979) 90 Cal.App.3d 626, 633.) In the instant matter, Yancey claims we may take judicial notice of the printout under Evidence Code section 452, subdivision (c).

Evidence Code section 452, subdivision (c) allows for permissive judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (Evid. Code, § 452, subd. (c).) Yancey's request for judicial notice is, however, not directed at an official act of the State of California. Instead, her request is for a printout of a screenshot of a website Yancey claims indicates an official act of the executive. Yancey fails to point us to any authority establishing judicial notice of such a printout is proper. Because we agree with CMD that California law suggests a court may not take judicial notice of the factual content of a website (*Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 519), we deny Yancey's request for judicial notice.

## II.

### THE TRIAL COURT'S ORDER ON CMD'S EVIDENTIARY OBJECTIONS

We next address Yancey's contention that the trial court erred in making its evidentiary rulings in connection with the motion for summary judgment. Yancey submitted a four-page declaration, with 14 exhibits. Those exhibits spanned over 75 pages. CMD submitted 20 objections to portions of Yancey's declaration and some of its exhibits. Each of these objections was based on multiple grounds. The trial court sustained all but four of these objections in their entirety, without explanation.

7

Generally, we review the trial court's evidentiary rulings for abuse of discretion. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405.) Under this standard, we reverse an evidentiary ruling only if the appellant makes a showing that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.)

This standard, however, assumes the trial court met its obligation with respect to ruling on evidentiary objections. "[I]n the summary judgment setting, . . . a trial court presented with timely evidentiary objections in proper form must expressly rule on the individual objections, and if it does not, the objections are deemed waived and the objected-to evidence included in the record." (*Demps v. San Francisco Housing Authority* (2007) 149 Cal.App.4th 564, 578.) Moreover, "expressly rul[ing] on the individual objections" (*ibid.*) does not mean ruling as the trial court did here, by simply issuing a blanket order sustaining 14 of 20 objections without identifying any particular basis. As noted above, for all its objections, CMD offered multiple grounds for exclusion. More specifically, for the 14 sustained objections, CMD offered between two and four objections. Because of the court's blanket ruling, we have no way of knowing whether the court accepted all of the grounds or just one. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255 (*Nazir*) [when a trial court issues a blanket ruling on numerous evidentiary objections without providing any reasoning, there "is hardly a ruling, as it could not provide any meaningful basis for review"]; see *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235 [although summarily ruling on numerous evidentiary rulings is a common labor-saving

practice in law and motion courts, the objections in this case needed individual attention].)

For example, CMD objected to Exhibit I—a five-page email thread between Deane and Yancey attached to Yancey's declaration—on the grounds it was (1) irrelevant, (2) constituted inadmissible hearsay, and (3) lacked foundation and evidentiary support. We disagree. In the email, Yancey questions whether her offer letter is legally binding. Therefore, the emails contained in Exhibit I tend to prove Yancey reported conduct she believed violated state law. Therefore, they are probative of Yancey's retaliation cause of action. Moreover, the authentication and foundation for the emails were established by the recipient, Yancey. Yancey's testimony provided "evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400.) Finally, the emails are not hearsay because they were not offered to prove the truth of the matter asserted—that Yancey's employment offer was not legally binding—but to prove Yancey reported conduct she believed violated state law.

Given the sweeping nature of the objections, 20 objections to an eighty-page document, multiple bases for each objection, and the problematic nature of some of the objections, we conclude the trial court's blanket ruling sustaining 14 of the objections, without reasoning, was an abuse of discretion. (See *Nazir, supra,* 178 Cal.App.4th at p. 257 ["order sustaining all but one of defendants' objections was a manifest abuse of discretion"].) Thus, the objected-to evidence will be used in reviewing the trial court's ruling on the summary judgment motion. (*Ibid.)*

What is more, the erroneous ruling excluding Exhibit I alone demonstrates "there is a reasonable probability that a result more favorable

9

to the appealing party would have been reached in the absence of the error." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 815; see Evid. Code, § 354.) Later in this opinion, we determine the trial court properly dismissed Yancey's Labor Code section 1102.5 cause of action. In our analysis, we rely on the emails in Exhibit I in determining Yancey engaged in protected activity. Although we determine Yancey's cause of actions fails on the second element, without Exhibit I, Yancey would not be able to establish she engaged in protected activity by reporting or opposing conduct she believed violated state law. In sum, we find the court's blanket order sustaining CMD's evidentiary objections was not harmless.

### III.

### THE TRIAL COURT'S ORDER GRANTING

### CMD'S MOTION FOR SUMMARY JUDGMENT

Yancey contends the trial court erred in concluding she had not established any triable issue of fact regarding her claims for (1) violation of Government Code section 19257 and California Code of Regulations, title 2, section 243.3, subdivision (b), (2) discrimination in violation of FEHA, and (3) retaliation in violation of Labor Code section 1102.5.

A. *Standard of Review*

The court may grant a motion for summary judgment or summary adjudication when """all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."""" (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "A

defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense." (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068; see Code Civ. Proc. § 437c, subd. (p)(2)*; Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

"Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence needed to establish an element . . . ." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354; see *Aguilar*, *supra*, 25 Cal.4th at pp. 853–855; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . .""" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225–226; see Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar*, at pp. 849–850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850, fn. omitted; see *Lemm v. Ecolab Inc.* (2023) 87 Cal.App.5th 159.) "'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work.""" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.)

11

"'""'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'"'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 684.)

B. *The Trial Court Erred in Granting the Motion for Summary Judgment for Violations of Government Code Section 19257 and California Code of Regulations, title 2, section 243.3, subdivision (b)*

Yancey contends the trial court improperly interpreted section 19257 when it determined CMD was not statutorily bound to pay her the compensation CMD promised for the services she rendered.

We conduct a de novo review of this purely legal issue of statutory interpretation. (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1376.) Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate its purpose. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.) We "look first to the words of the statute, which are the most reliable indications of the Legislature's intent." (*Ibid.*) We do not construe those words in a vacuum but rather consider them in the context of the statutory framework as a whole. (*Ibid.*) If the statutory language is unambiguous, then its plain meaning controls. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83.) If, however, the language supports more than one reasonable construction, then we may look to extrinsic materials, including legislative history. (*Ibid.*)

We start with the statutory language and framework. Section 19257 provides: "Any person acting in good faith in accepting an appointment or employment contrary to this part or the rules prescribed hereunder, shall be paid by the appointing power the compensation promised by or on behalf of the appointing power or, in case no compensation is so promised, then, the actual value of any service rendered and the expense incurred in good faith under such attempted appointment or employment, and has a cause of action against the appointing power therefor."

California Code of Regulations, title 2, section 243.3, subdivision (b) provides: "An employee who accepted an appointment in good faith that is subsequently voided or corrected shall retain only the compensation provided for in section 9 of the Board's regulations. In all cases, compensation shall be corrected on a prospective basis." In relevant part, California Code of Regulations, title 2, section 9 provides: "The word 'compensation' as used in Government Code Section 19257 includes salary, . . . salary step advancement . . . and eligibility for a salary above the minimum rate when legally appointed to the class. . . . [¶] 'Compensation' as used in Government Code Section 19257 does not include tenure in a position, seniority credits, permissive reinstatement, eligibility, mandatory reinstatement rights, eligibility to take promotional examinations, career credits, permanent or probationary status and service toward completion of the probationary period; nor continuity of service when used to determine the employee's right to or eligibility for any of the foregoing."

CMD asserts we must interpret Government Code section 19257 and California Code of Regulations, title 2, section 243.3 to apply to an appointment to a classification, not to changes to steps or salary ranges

13

within that classification. In support of its contention, CMD relies on *Geftakys v. State Personnel Board* (1982) 138 Cal.App.3d 844, 857 (*Geftakys*). *Geftakys* is distinguishable. There, the court found Government Code section 19257 did not apply where a computer error accidentally designated certain civil servants at a higher pay scale than they were entitled to. (*Id.* at p. 855.) The State notified the affected employee of the overpayment error, fixed the mistake, and commenced recouping the overpaid amounts in monthly installments deducted from the employee's salary. (*Id.* at p. 856.) The appellant sought a writ of mandate directing the state to stop deducting the overpayment. The trial court denied the petition and the appellate court affirmed. The *Geftakys* court determined [Government Code] section 19257 did not apply because "[i]t ha[d] never been contended by any party to th[e] case that appellant's appointment to class hearing officer I was made '. . . contrary to this part or the rules prescribed hereunder . . . .'" (*Id.* at p. 862.) Unlike in the case at hand, in *Geftakys* the employee knew the higher pay scale was temporary and that the temporary raise would be removed. (*Id.* at p. 863.)

Here, Yancey alleged she acted in good faith in accepting employment with CMD at a set rate. CMD did not present any contrary evidence on this point. These facts are more closely aligned to those in *Piccini v. California Emergency Management Agency* (2014) 226 Cal.App.4th 685 (*Piccini*). There, an applicant received and accepted an offer for a civil service position. (*Id.* at p. 687.) Shortly before the applicant was scheduled to begin work, the agency informed him that the position he was hired for had been eliminated. (*Ibid.*) Because the applicant had "actually rendered service or incurred expenses in good faith under his attempted appointment, [the

14

applicant] stated a claim for estoppel within the scope of section 19257." (*Piccini* at p. 689.) Most relevant here, the *Piccini* court specifically explained "section 19257 expresses a legislative policy that recognizes a cause of action in favor of someone who accepts an offer of state employment in good faith in violation of the rules and statutes that govern state hiring." (*Ibid.*)

It appears the trial court determined *Piccini* did not apply here because *Piccini* concerned "'an offer of state employment' rather than a salary dispute." The issue here, however, does not concern a salary dispute. Rather, Yancey challenges CMD's attempt to change her original offer of employment, specifically the compensation CMD offered and which she accepted in good faith. Because the trial court erroneously determined Government Code section 19257 and California Code of Regulations, title 2, section 243.3 did not apply to CMD's salary reduction, the court erred in granting CMD's motion for summary judgment.

C. *CMD's Salary Correction and Accounts Receivable were Not Prohibited Under Article XVI, Section 6 of the California Constitution*

For the first time in its respondent's brief, CMD alleges it was authorized to correct Yancey's salary and initiate an accounts receivable because the California Constitution bars public agencies from making gifts of public funds. In relevant part, article XVI, section 6 of the California Constitution provides "[t]he Legislature shall have no power to . . . make any gift or authorize the making of any gift, of any public money or thing of value to any individual . . . ." "The term 'gift' in the constitutional provision 'includes all appropriations of public money for which there is no authority or enforceable claim,' even if there is a moral or equitable obligation." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 450.) As we have

15

explained above, here Yancey has an enforceable claim under Government Code section 19257, and thus, the funds CMD alleged it overpaid her are not a "gift" under the California Constitution. As discussed below, additional cases cited by CMD do not persuade us otherwise.

In *Aebli v. Board of Education,* 62 Cal.App.2d 706 (*Aebli*), a government agency erroneously interpreted salary schedules and resolutions, and erroneously overpaid employees over a ten-year period. (*Id.* at pp. 712.) Once the agency discovered its mistake, it deducted the overpayment from the employees' salaries for the previous two years. (*Ibid.*) On appeal, the *Aebli* court held overpayments "by a governmental agency under either mistake of fact or law may be recovered from the payee." (*Id.* at p. 727.) But, the *Aebli* case does not concern Government Code section 19257, nor does it rely on article XVI, section 6 of the California Constitution. Moreover, the *Aebli* case states "that the *general* rule is that estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances." (*Id.* at p. 729, italics added.) As noted above however, "general expressions of estoppel doctrine do not control" in cases where Government Code section 19257 applies. (*Piccinini, supra,* 226 Cal.App.4th 685, 689.)

In *Holtzendorff v. Housing Authority of Los Angeles* (1967) 250 Cal.App.2d 596 a government agency reimbursed an employee for legal fees incurred by the employee in defending a criminal charge of embezzlement. (*Id.* at p. 601.) Unlike the case here, in *Holtzendorff*, the fees and thus the compensation arose from personal acts unconnected with the employee's official duties. (*Id.* at p. 634.)

16

D. *Yancey's First Cause of Action Does Not Fail as a Matter of Law Under Section 19838*

CMD next contends it was required to collect the alleged overpayments made to Yancey under section 19838. Section 19838 states, in relevant part: "(a) When the state determines an overpayment has been made to an employee, it shall notify the employee of the overpayment and afford the employee an opportunity to respond prior to commencing recoupment actions." (§ 19838, subd. (a).)

In support of its contention that section 19838 applies, CMD again relies on *Geftakys*, *supra,* 138 Cal.App.3d 844 for support. As we have explained, *Geftakys* does not apply to the case at hand. Moreover, section 19838 applies when a state agency has determined an overpayment has been made to an employee. We do not dispute this application in general. However, the issue of whether CMD overpaid Yancey and subsequently retroactively reduced Yancey's salary in the first place remains unresolved. Thus, determining that CMD properly initiated an accounts receivable to recover alleged overpayments would be premature at this point.

E. *Yancey Was Not Required to Exhaust Judicial Remedies*

CMD contends Yancey is precluded from arguing her initial placement in Range 4 was correct because Yancey failed to file a petition for writ of mandate challenging the SPB's August 17, 2021 determination. More specifically, CMD contends the SPB's decision is binding on Yancey and precludes her from relitigating the issues of whether she should have been placed in Range 4 upon hire and whether CMD took appropriate action by retroactively placing her in Range 2.

17

Generally, a party must exhaust administrative remedies before filing a lawsuit. (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1267.) An administrative remedy "'is exhausted only upon "termination of all available, nonduplicative administrative review procedures."'" (*Ibid.*) "The exhaustion rule "'is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts."'" (*Id.* at p. 1268; see *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70, [the exhaustion requirement is a jurisdictional prerequisite to seeking relief through the courts].) Even where the administrative remedy does not resolve all issues or provide complete relief, the exhaustion requirement is still favored because it may reduce the scope of litigation. (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 383.) If an employee was a party to a "quasi-judicial administrative agency proceeding" that resulted in a final administrative decision, that decision will be binding in later civil actions unless the employee exhausts his judicial remedies by challenging the administrative decision by writ of mandate. (*Johnson,* at p. 61.)

For this doctrine to apply, CMD must show the SPB determination possessed "a judicial character." (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 846–847.) "Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944.)

In this case, the SPB's decision did not possess judicial character. There was no testimony given under oath, no ability to subpoena, and no party was able to call, examine, or cross-examine witnesses. For these reasons, the SPB's decision and Yancey's failure to file a writ challenging the decision do not preclude us from addressing Yancey's claim regarding her initial placement.

F. *The Trial Court Did Not Err in Granting the Motion for Summary Adjudication on Yancey's FEHA Cause of Action*

1. *Applicable Law*

FEHA prohibits employers from discriminating against employees on various grounds, including "sex." (§ 12940, subd. (a).) "Sex," in turn, is defined to include "[p]regnancy or medical conditions related to pregnancy," "[c]hildbirth or medical conditions related to childbirth," and "[b]reastfeeding or medical conditions related to breastfeeding." (§ 12926, subd. (r)(1).)[3]

"Section 12945 of the FEHA, known as the Pregnancy Disability Leave Law (PDLL), is based on the federal Pregnancy Discrimination Act (PDA) (42 U.S.C. § 2000e(k)) and ensures equal employment opportunity by affording specific protections for pregnant employees." (*Paleny v. Fireplace Products U.S., Inc.* (2024) 103 Cal.App. 5th 199, 207.) Section 12945 supplements provisions of sections 12926 and 12940 that apply to pregnancy-related medical conditions by delineating additional employment practices

---

[3] Section 12945 provides additional protections for women who are pregnant or have related medical conditions, including by prohibiting an employer from "refus[ing] to allow an employee disabled by pregnancy, . . . or a related medical condition to take a leave for a reasonable period of time . . ." (§ 12945, subd. (a)(1).)

19

that are unlawful "unless based upon a bona fide occupational qualification." (§ 12945, subd. (a).)

Section 12945 addresses two distinct protections available to employees disabled by or in need of accommodation due to pregnancy, childbirth, or a related medical condition. First, employees disabled by such a condition are entitled to pregnancy-related disability leave. Specifically, it is unlawful for an employer to refuse to allow an employee disabled by pregnancy, childbirth, or a related medical condition to take a leave of absence for a reasonable period, not to exceed four months. (§ 12945, subd. (a)(1).) Second, section 12945 entitles an employee to accommodation "for a condition related to pregnancy, childbirth, or related medical condition" if such accommodation is requested by the employee and recommended by her health care provider. (§ 12945, subd. (a)(3)(A).) In short, "section 12945 affords important protections to employees affected by pregnancy, over and above the protections of section 12940." (*Lopez v. La Casa de Las Madres* (2023) 89 Cal.App.5th 365, 381.)

Because employees rarely have direct evidence of an employer's improper intent, California courts have adopted a three-part burden-shifting analysis in wrongful employment termination cases known as the *McDonnell Douglas* test. (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354–55 (*Guz*).) The test requires the plaintiff-employee to first establish a prima facie case of discrimination. (*Guz*, at pp. 354–355; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) A prima facie showing of discrimination under FEHA generally requires that the plaintiff show (1) she "was a member of a protected class", (2) she "was qualified for" or

20

competently performing her job, (3) she "suffered an adverse employment action", and (4) "some other circumstance suggesting discriminatory motive." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004.)

Once the plaintiff establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory or nondiscriminatory reason for the adverse employment action. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.) When the employer has demonstrated a legitimate reason for an adverse employment action, "an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing[] but must adduce *substantial additional evidence* from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual." (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1113, italics added (*Loggins*).) Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it "remains subject to careful scrutiny." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).) The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid.*) The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, "an actual causal link between prohibited motivation and termination." (*Id.* at pp. 433–434.)

2. *Analysis*

Yancey argues she was terminated because of temporary disability caused by her pregnancy. Even assuming Yancey established a prima facie case of wrongful termination, thus shifting the burden to CMD to

21

show a legitimate, nondiscriminatory or nonretaliatory justification for its decisions to reduce Yancey's salary and terminate her, we find she failed to raise a triable issue of fact in response to CMD's rationale.

### a. CMD's Justification for Terminating Yancey

CMD explained it reduced Yancey's salary after discovering it had improperly placed her and other employees in a salary range they did not qualify for and thus had overpaid them. CMD noted it identified these errors after reviewing *all* military instructors' salaries following a report that another employee was being paid incorrectly in 2019. The audit of the military instructors' salaries lasted over a year. CMD further explained it required Yancey to return to work after her one year of maternity leave because students were returning to STARBASE Los Alamitos for in-person instruction towards the end of 2020 after COVID-19 restrictions had loosened. Thus, according to CMD, there was an operational need for Yancey to return to work. Because Yancey did not return to work and was absent without approved leave for five consecutive days, CMD invoked the absence without leave (AWOL) statute and terminated her. Based on these facts, we find CMD offered substantial evidence of a legitimate, nondiscriminatory or nonretaliatory basis for its decisions to reduce Yancey's salary and later terminate her.

### b. Yancey's Showing of Pretext

To avoid summary judgment, Yancey must offer substantial evidence that CMD's stated rationale for her termination or salary reduction is untrue or pretextual. "The plaintiff's burden is to prove, by competent evidence, that the employer's proffered justification is mere pretext; i.e., that the presumptively valid reason for the employer's action was in fact a

22

coverup. (*Yanowitz, supra,* 36 Cal.4th at p. 1042) In responding to the employer's showing of a legitimate reason for the complained-of action, the plaintiff cannot "'simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation] and hence infer 'that the employer did not act for the [ . . . asserted] non-discriminatory reasons.'""""" (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388–389 (*McRae*).) Yancey failed to create a triable issue of fact on this issue.

Yancey alleges she established pretext based on the timing of her employment termination—i.e., CMD terminated her and reduced her salary after the birth of her son and while she was on protected leave. According to Yancey, the timing "allows for an inference that the adverse employment actions were motivated by [her] history of disability." Although the timing of Yancey's termination established Yancey's prima facie burden, an issue which CMD contests, it does not suffice to also carry her burden of showing pretext after CMD set forth legitimate reasons for its decision. (*Loggins, supra,* 151 Cal.App.4th at pp. 1112–1113.) Put another way, after CMD established a legitimate basis for terminating Yancey, Yancey could not meet her burden of showing pretext solely by recycling the presumption arising out of the timing of the termination. To hold otherwise "would eviscerate the *McDonnell Douglas* framework for resolving claims at the demurrer or summary judgment stage, because the same minimal showing required of the plaintiff to raise a prima facie case would also suffice to preclude the

23

employer from obtaining summary judgment notwithstanding otherwise unrebutted proof of articulated legitimate reasons for the employment termination." (*Loggins,* at pp. 1112–1113.) Thus, Yancey's "evidence of a temporal proximity 'only satisfies [her] *initial* burden.'" (*Id.* at p. 1112, italics added.)

Yancey also contends she established a pretext because CMD's act of reducing her wages was unlawful and could not constitute a legitimate business decision. As CMD notes, Yancey cites no authority for her contention. In any event, her assertion is incorrect. "'A "pretext for discrimination" means more than an unusual act; it means something worse than a business error; "pretext" means deceit used to cover one's tracks.' [Citation.] . . . '[T]he overall correctness or desirability of the reasons proffered is not relevant . . . .' [Citation.]" (*Grube v. Lau Industries, Inc.* (2001) 257 F.3d 723, 730.) It is not enough for the plaintiff to show the employer's reasons were mistaken or unwise, instead the plaintiff "'"must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" "'in the employer's proffered legitimate reasons that a reasonable factfinder" could conclude that the stated reasons are not credible, and that the employer's true motive was retaliatory. (*McRae, supra,* 142 Cal.App.4th at p. 389.) Here, Yancey's claim that CMD "unlawfully" reduced her wages is essentially an allegation that CMD made a business error. This act by CMD, therefore, does not, as Yancey argues, show pretext.

G. *The Trial Court Did Not Err in Granting CMD's Motion for Summary Adjudication on Yancey's Cause of Action for Violation of Labor Code section 1102.5*

1. *Applicable Law*

Labor Code section 1102.5 "provides whistleblower protections to employees who disclose wrongdoing to authorities" (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*)), as well as to employees who refuse to participate in illegal activities. (See *Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 718.)

Labor Code section 1102.5 provides that an employer "shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (Lab. Code, § 1102.5, subd. (b).) Subdivision (c) of the statute states, in relevant part: "An employer . . . shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (Lab. Code, § 1102.5, subd. (c).)

Claims for retaliation under this Labor Code provision are subject to a different analysis than those under FEHA. "We instead look to [Labor Code] section 1102.6, which 'provides the governing framework.'

25

[Citation.] To sum up the statute's requirements: 'First, it places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. . . . Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity.' [Citations.]" (*Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367, 379–380 (*Vatalaro*); see *Lawson, supra,* 12 Cal.5th at p. 718.)

While we "liberally construe plaintiff's [evidentiary] showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*King, supra*, 152 Cal.App.4th at p. 433.)

2. *Protected Activity*

A disclosure within the meaning of Labor Code section 1102.5, subdivision (b) need not be akin to a legal memo citing specific statutes. (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592–593 [reversing summary judgment against a former prosecutor who alleged he was fired for recommending the dismissal of a criminal case because although he did not expressly cite "his belief continued prosecution would violate the defendant's due process rights as well as a prosecutor's ethical obligations under state law" to his superiors, the statute "does not require such an express

26

statement. It requires only that an employee disclose information and that the employee reasonably believe the information discloses unlawful activity"].) The statute requires a disclosing employee to have reasonable cause to believe the information disclosed would reveal a violation of law. (*Vatalaro, supra,* 79 Cal.App.5th at p. 382.) Although the employee need not cite any specific statute or regulation to their employer, a finder of fact must have some benchmark against which to assess reasonableness. (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 734 [explaining that the "'reasonable cause to believe'" clause in the statute "imposes a requirement of objective reasonableness and excludes from whistleblower protection disclosures that involve only disagreements over discretionary decisions, policy choices, interpersonal dynamics, or other nonactionable issues"].)

Here, Yancey contends she had a reasonable belief her acceptance of an appointment should have been legally binding. Yancey communicated her complaint about the legality of her salary change to Deane. Specifically, in an email dated November 6, 2020, Yancey asked Deane to show her "where it says offer letter is not legally binding?" For purposes of this appeal, we assume Yancey engaged in protected activity by virtue of this email by reporting or opposing conduct she believed violated state law.

### 3. *CMD's Reasons for Its Employment Decisions*

We next turn to the trial court's ruling that CMD submitted evidence of legitimate, nonretaliatory reasons for its adverse employment actions. CMD alleged its actions were based on legitimate business reasons because Yancey "voluntarily resigned pursuant to the AWOL statute after [Yancey] did not return to work as required on March 22, 2021 and was

27

absent without approved leave for five consecutive working days." CMD was required to show not only that its actions in terminating Yancey's employment were based on legitimate business reasons, but that it would have taken the same actions for those reasons even if Yancey "had not engaged in" the alleged whistleblower activities. (Lab. Code, § 1102.6; see *Lawson, supra*, 12 Cal.5th at pp. 713–714 ["plaintiffs may satisfy their burden of proving unlawful retaliation" under Lab. Code, § 1102.5 "even when other, legitimate factors also contributed to the adverse action"].)

Because CMD would have the burden at trial to prove these facts by clear and convincing evidence, it was required on summary judgment to "present evidence that would require a reasonable trier of fact" (*Aguilar, supra*, 25 Cal.4th at p. 845) to find it "highly probable" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996) CMD would have taken the same actions regardless of Yancey's alleged whistleblower activities. (See *Aguilar*, at p. 851 ["how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial"]; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1053 ["'where the . . . ultimate burden of proof will be by clear and convincing evidence, the higher standard of proof must be taken into account in ruling on a motion for summary judgment or summary adjudication'"].)

CMD offered admissible evidence of the following: Yancey had been on leave of one sort or another for more than one year, beginning February 6, 2020. Yancey extended her leave, which was originally scheduled to end August 17, 2020. On September 21, 2020, Yancey advised CMD she would be going on unemployment after her disability leave expired, and on

28

December 28, 2020, she advised CMD she would continue on unemployment through the new year. CMD continued to approve Yancey's leave and had held her position open for her the entire time.

On November 6, 2020, Yancey sent an email to Deane reading, in relevant part: "Can you show me where it says [the] offer letter is not legally binding?" This is the protected activity underlying Yancey's Labor Code section 1102.5 claim.

On February 22, 2021, CMD sent Yancey a return to work notice, requiring she return to work no later than March 22, 2021. Yancey did not return to work on March 22, 2021 and was absent without approved leave on five consecutive working days, March 22 through March 26, 2021. On April 1, 2021, CMD sent Yancey a notice of AWOL separation, effective March 26, 2021.

The undisputed evidence establishes CMD continued to hold Yancey's position open for her for more than four months after she sent the November 6 email. A return to work notice was not sent to Yancey immediately after she sent the November 6 email, or after she advised CMD in December that she would again be extending her leave. CMD did not terminate Yancey's employment after she sent the November 6 email; indeed, it did not do so until after the 30-day period specified in the return to work notice had expired. The foregoing meets the requirement of clear and convincing evidence that CMD would have terminated Yancey's employment effective March 26, 2021 even if she had not sent the November 6, 2020 email.

None of this evidence was disputed by Yancey. The trial court overruled all of Yancey's evidentiary objections. On appeal, Yancey does not

29

challenge these rulings (although she did challenge the court's order sustaining some of CMD's objections to the evidence she offered in opposition to the motion).

DISPOSITION

We affirm the trial court's ruling on Yancey's FEHA and Labor Code section 1102.5 causes of action. We reverse and remand the court's ruling on the Government Code section 19257 cause of action. Parties shall bear their own costs on appeal.



DELANEY, ACTING P. J.

WE CONCUR:


GOODING, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.